IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v.     NO. 4:16-CR-40008-001 | |
| NATHAN KARL THOMAS | DEFENDANT |

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the defendant, Nathan Karl Thomas, by and through his attorney, Bruce D. Eddy, Federal Public Defender, and respectfully submits the following sentencing memorandum for the Court's consideration:

PROCEDURAL BACKGROUND

On March 31, 2016, Mr. Thomas pleaded guilty to a two-count Information with Forfeiture Allegation charging him with receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1).  Mr. Thomas is currently detained.

The final presentence investigation report ("PSR") was prepared by the United States Probation Office and filed on December 20, 2016.  (Doc. 16).  The PSR concludes that Mr. Thomas's advisory Guideline sentencing range is 324 to 405 months imprisonment based on a total offense level of 41 and a criminal history category of I.  (PSR, ¶ 149).  Mr. Thomas has filed a number of objections to the PSR that remain unresolved.[1]  (Doc. 14).  As will be discussed in more detail in this memorandum, Mr. Thomas has objected to the PSR's finding of certain specific offense characteristics and accompanying enhancements to his offense level under § 2G2.2, to the

---

[1] Many of these objections are discussed in greater detail in this memorandum; however, Mr. Thomas maintains all unresolved objections he made to the PSR regardless of whether those objections are specifically discussed herein.

finding that § 2G2.2(c)(1)'s cross reference to § 2G2.1 is applicable, and to the finding of certain specific offense characteristics under § 2G2.1. (Doc. 14).

## FACTS

As part of the Plea Agreement filed on March 31, 2016 (Doc. 5), Mr. Thomas agreed that the following facts are true and undisputed:

> On December 4, 2014, a minor female resident of Bowie County, Texas, was interviewed at the Texarkana Children's Advocacy Center and stated that she and NATHAN KARL THOMAS, a 20-year-old male from Arkansas, began communicating in January 2014 via an internet-based social media application called "Kik Messenger." At the time, the minor was 14 years of age. The minor told forensic interviewers that, in January of 2014, she and NATHAN KARL THOMAS met in person and began a relationship.
> The minor further stated that on various occasions while using "Kik Messenger" she posed for and took sexually explicit images of herself and sent them to NATHAN KARL THOMAS. The minor stated that she took multiple nude images of herself with her cell phone, a Huawei-U8652 which was manufactured in China, and sent them to THOMAS via the internet. These images included close-ups of the minor's vagina and anus.
> On December 6, 2014, a federal search warrant was executed at NATHAN KARL THOMAS's home in Lockesburg, Arkansas, which is in the Western District of Arkansas. At the time, a LG model cellular phone, which was also manufactured outside the state of Arkansas, was recovered from THOMAS's pants pocket. The phone was forensically examined which resulted in the recovery of Kik Messenger chat logs between THOMAS and the victim, as well as multiple nude pictures of the minor. Among the images, law enforcement located the image charged in count 1 of the Information, which depicted the minor setting on the floor exposing her vagina to the camera, so as the focal point of the image is of the minor's vagina. The parties agree and stipulate that this image was created by the minor victim. The image was received by NATHAN KARL THOMAS on or about October 30, 2014 via the internet.
> In addition to the image of the minor victim that was contained in count 1 of the Information, additional images and videos of the same minor victim engaging in sexually explicit conduct were recovered from both a LG model cellular phone as well as a Samsung SCH-S720C Galaxy Proclaim cellular phone that were seized from NATHAN KARL THOMAS.
> Videos and images of other minors engaging in sexually explicit conduct were also recovered from NATHAN KARL THOMAS's two phones and a Toshiba 500 gigabyte hard drive. Among those videos and images, law enforcement located the video charged in count 2 of the Information, which had been sent to THOMAS

via Kik Messenger and depicted a woman removing the diaper from a two-year-old male and then abusing the child by committing oral sex upon the child. The woman who produced this video was a friend of THOMAS and provided the video to THOMAS after he requested that she send a video to him over the internet.

## LAW & ANALYSIS

Since 2005, the Sentencing Guidelines have been considered advisory, and are now just one of several criteria a court considers when imposing a sentence. *United States v. Booker*, 543 U.S. 220, 245 (2005). The process a sentencing court must follow since *Booker* involves three steps: first, the court must determine the appropriate advisory sentencing range; second, it must examine the propriety of a traditional departure under the Guidelines; and finally, it must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether to vary from the Guidelines. *See United States v. Garlewicz*, 493 F.3d 933, 937 (8th Cir. 2007).

### Determination of Advisory Range

The first step the Court must take in its analysis is the correct determination of the Guideline sentencing range. The PSR suggests that Mr. Thomas's sentencing range is 324 to 405 months based upon a total offense level of 41 and a criminal history category of I. PSR, ¶ 151. Mr. Thomas has made numerous objections to the PSR which remain unresolved, and he contends that the correct advisory range is 121 to 151 months based upon a total offense level of 32 and a criminal history category of I. (*See* Defendant's Response/Objections to PSR, Doc. 14; Addendum to PSR, Doc. 16-1). While he admits that certain specific offense characteristics are applicable under § 2G2.2, Mr. Thomas contends that others were incorrectly found to apply, and that § 2G2.2(c)(1)'s cross reference to § 2G2.1 should not apply.

*U.S.S.G. § 2G2.2(b)(3)(F) Enhancement*

The PSR recommends application of the 2-level enhancement under § 2G2.2(b)(3)(F) because Mr. Thomas allegedly "requested Branson upload and distribute images to peer-to-peer services so that he could view them, all of which Branson did." (PSR, ¶ 86). This enhancement applies when "the defendant knowingly engaged in distribution, other than distribution described in subdivisions (A) through (E) . . . ." Mr. Thomas objected to the application of the enhancement, noting that paragraphs 61-64 of the PSR describe conversations between Mr. Thomas and Ms. Branson over Kik Messenger. (Doc. 14, Objection Seven, pp. 3-4). These conversations reflect mere solicitation of images directly from Ms. Branson via Kik Messenger. According to application note 1 to § 2G2.2, "distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but *does not include the mere solicitation of such material by a defendant*" (emphasis added). Kik Messenger is *not* a peer-to-peer file-sharing service that would make the image(s) available to others via the internet; it is, instead, a messaging service similar to SMS/text messaging which is widely available on almost all modern cellular phones. Mr. Thomas's conduct does not meet the definition of "distribution" and his objection to the application of the 2-level enhancement under § 2G2.2(b)(3)(F) should be sustained.

*U.S.S.G. § 2G2.2(b)(5) Enhancement*

The PSR recommends application of the 5-level enhancement under § 2G2.2(b)(5) because Mr. Thomas allegedly "engaged in sexual relationships with both E.A. and K.G." (PSR, ¶ 88). This enhancement applies when "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor . . . ." Mr. Thomas objected to the application of this

enhancement based on his prior objections. (Doc. 14, Objection Eight, p. 4). Mr. Thomas objected to many of the statements made by E.A. and K.G. and maintains that their allegations of sexual contact are false; Mr. Thomas also noted that the conduct alleged in paragraphs 71-75 of the PSR (regarding statements made by K.G.) is neither part of the instant offense nor relevant conduct.[2] (Doc. 14, Objections Two and Five, pp. 2-3). While admitting that he requested photos of E.A., Mr. Thomas further maintains the objection that he did not request sexually explicit photos and videos on numerous occasions. (Doc. 14, Objection Three, p. 2). Thus, Mr. Thomas did not engage in a pattern of activity involving the sexual abuse or exploitation of a minor, and his objection to the application of the 5-level enhancement under § 2G2.2(b)(5) should be sustained.

*U.S.S.G. § 2G2.1(c)(1) Cross Reference to § 2G2.1*

The PSR applies the cross reference to § 2G2.1 found at § 2G2.2(c)(1) because "the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct . . . ." (PSR, ¶¶ 95-96). Mr. Thomas objected that he was not convicted of violating a statute lending itself to sentencing under § 2G2.1, and that the essential elements of production of child pornography were neither found by a jury not admitted to by Mr. Thomas in his guilty plea. (Doc. 14, Objection Nine, p. 4). Mr. Thomas did not take any photographs or videos of a minor in connection with the instant offense, nor was he the but-for cause of the minor producing any visual depictions. Again, while he admitted to requesting photos of E.A., he did not cause her to

---

[2] Mr. Thomas also notes that paragraphs 71-75 are included in a section of the PSR entitled "Offense Behavior Not Part of Relevant Conduct." It therefore appears that Probation concedes that the allegations contained therein are not relevant conduct.

5

take any such images. Moreover, Mr. Thomas maintains that he did not request photos of E.A. *engaging in sexually explicit conduct*.

In application note 7(B) to § 2G2.2, "sexually explicit conduct" has the meaning given that term in 18 U.S.C. § 2256(2), which includes "lascivious exhibition of the genitals or pubic area of any person . . . ." While the PSR reflects that Mr. Thomas "would often request photos of her" (and Mr. Thomas admits that he requested photos of E.A., although he did not do so often), it does not reflect that he asked E.A. to send photos involving lascivious exhibition of her genitals or pubic area. Mr. Thomas's objection to the application of the cross reference in § 2G2.1(c)(1) should be sustained.

*U.S.S.G. § 2G2.1(b)(2)(B) Enhancement*

In the event that the Court determines that the cross reference to § 2G2.1 is applicable, Mr. Thomas continues to object to application of the 4-level enhancement under § 2G2.1(b)(2)(B). (PSR, ¶ 98). This enhancement applies "[i]f the offense involved . . . (i) the commission of a sexual act; and (ii) conduct described in 18 U.S.C. § 2241(a) or (b) . . . ." According to application note 2 to § 2G2.1, "sexual act" has the meaning given to that term in 18 U.S.C. § 2246(2). "Sexual act" is defined there to mean

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

Application note 2 also discusses the definition of "conduct described in 18 U.S.C. § 2241(a) or (b)":

> (i) using force against the minor; (ii) threatening or placing the minor in fear that any person will be subject to death, serious bodily injury, or kidnapping; (iii) rendering the minor unconscious; or (iv) administering by force or threat of force, or without the knowledge or permission of the minor, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the minor to appraise or control conduct. This provision would apply, for example, if any dangerous weapon was used or brandished, or in a case in which the ability of the minor to appraise or control conduct was substantially impaired by drugs or alcohol.

The PSR suggests that the § 2G2.1(b)(2)(B) enhancement should be applied because of certain alleged sexual contact that occurred between Mr. Thomas and E.A. (PSR, ¶ 98). Mr. Thomas objected because the instant offense did not involve the commission of a sexual act, much less one described in 18 U.S.C. § 2241(a) or (b). (Doc. 14, Objection Ten, pp. 4-5). Mr. Thomas continues to maintain his objection that no such conduct occurred. Moreover, even if the sexual contact had occurred as alleged, it is not relevant conduct to Mr. Thomas's offense under § 2G2.1. The focus of § 2G2.1 is on the production of child pornography; therefore, this particular enhancement only applies when the production of the image(s) involved sexual contact that is described in § 2241(a) or (b). Because grouping of multiple counts under § 2G2.1 is not required under § 3D1.2(d), only the acts and omissions committed, aided, abetted, counseled, induced, procured, or willfully caused by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" are considered to be relevant conduct. U.S.S.G. § 1B1.3(a)(1). The broader definition of relevant conduct under § 1B1.3(a)(2), which includes all acts and

omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction, does not apply under § 2G2.1.

The specific conduct associated with Mr. Thomas's offense of conviction involves receipt of an image depicting

> a 15-year-old female [E.A.] taking a selfie. The female is wearing a black camisole and sitting on the floor in front of an oval mirror with "uninvited" written along one side of the mirror. The female's legs are spread open at about a 45-degree angle so as to emphasize the view of her vagina.

(PSR, ¶ 66). The parties have stipulated that this image was created by E.A. (Doc. 5, p. 4). This image does not depict the commission of any sexual act. Sexual conduct of the type described in the PSR (which Mr. Thomas again denies) clearly did not occur during the production of the image at issue, in preparation for the production of the image, or in the course of attempting to avoid detection or responsibility for the production of the image. It is therefore not relevant conduct and cannot be used to support the application of the § 2G2.1(b)(2)(B) enhancement. Mr. Thomas's objection to this 4-level enhancement should be sustained.

*U.S.S.G. § 2G2.1(b)(3) Enhancement*

In the event that the Court determines that the cross reference to § 2G2.1 is applicable, Mr. Thomas continues to object to application of the 2-level enhancement under § 2G2.1(b)(3). (PSR, ¶ 99). This enhancement applies "[i]f the defendant knowingly engaged in distribution . . . ." The PSR suggests that this enhancement should apply because "the defendant instructed E.A. on how to upload and distribute images to peer-to-peer services." (PSR, ¶ 99). Mr. Thomas objected on the basis that he denies having instructed E.A. in such a manner, and because there is no evidence that any images were uploaded or distributed using peer-to-peer services. (Doc. 14, Objection Ten, p. 5). The instant offense does not involve distribution, and Mr. Thomas maintains

his objection to the application of the § 2G2.1(b)(3) enhancement and contends that it should be sustained.

*U.S.S.G. § 2G2.1(b)(4) Enhancement*

In the event that the Court determines that the cross reference to § 2G2.1 is applicable, Mr. Thomas continues to object to application of the 4-level enhancement under § 2G2.1(b)(4). (PSR, ¶ 100). This enhancement applies "[i]f the offense involved *material that portrays* (A) sadistic or masochistic conduct or other depictions of violence; or (B) an infant or toddler . . . ." U.S.S.G. § 2G2.1(4) (emphasis added). The Eighth Circuit has held that this enhancement applies when the material at issue *depicts* sadistic, masochistic, or violent conduct, regardless of what the victim *experiences*. *United States v. Raplinger*, 555 F.3d 687, 694-95 (8th Cir. 2009) (affirming application of the enhancement when photographs depicted the minor victim wearing handcuffs).

The PSR suggests that this enhancement is applicable based upon allegedly sadistic sexual contact that occurred between Mr. Thomas and the minor victim, E.A. (PSR, ¶ 100). However, the material at issue does not portray any such sexual contact. Although Mr. Thomas denies that such sexual contact occurred, application of this enhancement is not appropriate simply based on the fact that the image of E.A. does not portray sadistic or masochistic conduct or depict any violence. Mr. Thomas's objection to the 4-level enhancement under § 2G2.1(b)(4) should be sustained.

*Calculation of the Guideline Range*

Under § 2G2.2(a), Mr. Thomas's base offense level is 22. In the plea agreement, the parties stipulated that Mr. Thomas is subject to a 2-level enhancement for age of the minor pursuant to § 2G2.2(b)(2); a 4-level enhancement because the offense involved material that portrays

sadistic or masochistic conduct or other depictions of violence pursuant to § 2G2.2(b)(4); a 2-level enhancement because the offense involved the use of a computer or an interactive computer service pursuant to § 2G2.2(b)(6); and a 5-level enhancement because the offense involved 600 or more images pursuant to § 2G2.2(b)(7).  (Doc. 5, p. 12).  Accordingly, Mr. Thomas contends that his adjusted offense level should be 35.  After a 3-level reduction for acceptance of responsibility, Mr. Thomas's total offense level should be 32.  Mr. Thomas has no criminal history whatsoever, and his zero criminal history points place him in criminal history category I.  Mr. Thomas's advisory Guideline range is therefore 121 to 151 months imprisonment, rather than the 324-to-405-month range reflected in the PSR.

**Application of a Traditional Departure**

Mr. Thomas is not seeking a traditional departure.

**Application of § 3553(a) Factors**

In the event that the Court overrules Mr. Thomas's objections to the PSR, he believes a downward variance from the advisory Guideline range is warranted in his case.  If some or all of his objections are sustained, he believes that a within-Guideline-range sentence may be appropriate, in any event not to exceed the statutory maximum of 20 years imprisonment for a violation of 18 U.S.C. § 2252(a)(2) & (b)(1).

18 U.S.C. § 3553(a) begins with the mandate that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  As discussed below, the child-pornography guidelines tend to recommend sentences that are greater than necessary in most cases, and the instant case is no exception.

*U.S.S.G. §§ 2G2.1 and 2G2.2 Are Not Based Upon Empirical Evidence*

The particular guidelines at issue in this case have been subject to criticism in several courts around the country based largely on the fact that they were not based on empirical research. Most guidelines are promulgated by the Sentencing Commission based on study and examination of past practices. As explained by the Supreme Court in *Rita v. United States*, "the Commission took an 'empirical approach,' beginning with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past and then modifying and adjusting past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like." 551 U.S. 338, 349 (2007).

On the other hand, the current child pornography guidelines are not the product of this empirical approach. Instead, Congress has on several occasions directed the Sentencing Commission to amend these guidelines to recommend harsher penalties. *See United States v. Dorvee*, 616 F.3d 174, 184-85 (2d Cir. 2010). "The Commission has often openly opposed these Congressionally directed changes." *Id.* at 185. The court in *Dorvee* noted that application of the enhancements under § 2G2.2 "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Id.* at 186.

The Supreme Court has recognized that a district court does not abuse its discretion by concluding that the crack cocaine guidelines typically yield a sentence greater than necessary to achieve the goals of § 3553(a) because those particular guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," as they were purely a response to the mandatory minimums set by Congress and "did not take account of 'empirical data and national experience.'" *Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007) (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). The *Dorvee* court

concluded that the same is true for the child pornography enhancements found at § 2G2.2, and noted its prior holding that "a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *Dorvee*, 616 F.3d at 188 (quoting *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc)). The court suggested that the weight to be given to this guideline should be less than normal, encouraging district judges "to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2—ones that can range from non-custodial sentences to the statutory maximum—bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *Id.*

Other circuit courts have reached similar conclusions. *See United States v. Henderson*, 649 F.3d 955, 960, 962 (9th Cir. 2011) (concluding that "district judges must enjoy the same liberty to depart from [the child-pornography Guidelines] based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*" because "[m]ost of the revisions [to § 2G2.2] were Congressionally-mandated and not the result of an empirical study"); *United States v. Grober*, 624 F.3d 592, 601-02, 607-09 (3d Cir. 2010) (discussing *Dorvee* at length and concluding that the district court did not abuse its discretion by varying downward after adequately explaining why it found § 2G2.2 to be flawed); *see also United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) (expressing the court's view that the child-pornography guidelines are "harsher than necessary").

Several district courts within the Eighth Circuit have likewise found downward variances to be permissible (and appropriate) based on a policy disagreement with § 2G2.2. In *United States*

*v. Howard*, No. 8:08CR387, 2010 WL 749782 (D. Neb. Mar. 1, 2010), the district court relied on *United States v. O'Connor*, 567 F.3d 395 (8th Cir. 2009), and *United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009), for the proposition that a district court may sentence below the recommended Guideline range in a child-pornography case because of a disagreement with the Guidelines. The court in *Howard* explained:

> When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the ordinary case, in which the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence.

2010 WL 749782, at *4 (internal quotations and citations omitted). The court concluded that "[i]n such cases, it is 'not an abuse of discretion for a district court to conclude when sentencing a particular defendant' that application of the guideline 'yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes even in a mine-run case.'" *Id.* (quoting *Kimbrough*, 552 U.S. at 110). The author of *Howard*, then-Chief Judge Joseph F. Bataillon, has written numerous other opinions addressing § 2G2.2 and consistently reaching the same conclusion. *See, e.g.*, *United States v. McGrath*, No. 8:12CR422, 2014 WL 351975 (D. Neb. Jan. 31, 2014); *United States v. Mallatt*, No. 4:13CR3005, 2013 WL 6196946 (D. Neb. Nov. 27, 2013); *United States v. Stieren*, No. 8:12CR423, 2013 WL 5539359 (D. Neb. Oct. 7, 2013); *United States v. Meysenburg*, No. 8:08CR361, 2009 WL 2948554 (D. Neb. Sept. 11, 2009); *United States v. Grinbergs*, No. 8:05CR232, 2008 WL 4191145 (D. Neb. Sept. 8, 2008). The district court in *United States v. Munoz*, Crim. No. 11-167, 2012 WL 5351750 (D. Minn. Oct. 30, 2012), also "agree[d] with the numerous courts that have determined that the Guidelines in child pornography cases are owed

less deference than Guidelines for other offenses" because they are largely the product of congressional directives rather than Commission study and expertise. *Munoz*, 2012 WL 5351750, at *4 & n.2 (referencing certain cases already discussed above and collecting other similarly-decided cases from district courts in Florida, Illinois, Iowa, Kansas, Maine, Nebraska, New Jersey, New York, Ohio, Tennessee, and Wisconsin).

In *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008), Chief Judge Robert W. Pratt agreed with Judge Bataillon's rationale:

> As Chief Judge Bataillon noted in *United States v. Baird*, No. 8:07CR204, 2008 WL 151258, at *7 (D. Neb. Jan. 11, 2008), the guidelines for child exploitation offenses were not developed using an empirical approach by the Sentencing Commission, but rather were mainly promulgated in response to statutory directives. Specifically, the Protect Act directly amended guideline [§] 2G2.2 by amending the guideline enhancements for specific offense characteristics. These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.

The court continued:

> The statute here provides a broad range of punishment for this crime, and if Congress does not want the courts to try and sentence individual defendants throughout that range based on the facts and circumstances of each case, then Congress should amend the statute, rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of the Sentencing Commission.

*Id.* District Judge Mark W. Bennett "join[ed his] brethren who find that the child pornography guideline, U.S.S.G. § 2G2.2, which is the result of congressional mandates, is entitled to considerably less deference than other guidelines that *are* based on the Commission's exercise of its institutional expertise and empirical analysis." *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1103 (N.D. Iowa 2009).

14

In another Iowa case, Judge Bennett also recognized that § 2G2.1 suffered from the same infirmities that caused him to categorically reject § 2G2.2 on policy grounds. *United States v. Jacob*, 631 F. Supp. 2d 1099 (N.D. Iowa 2009). Like § 2G2.2, Judge Bennett recognized, § 2G2.1 was not developed based on the empirical approach ordinarily applied by the Sentencing Commission, but instead on congressional directives and mandatory minimum penalty increases. *Id.* at 1114. Judge Bennett also noted that, like § 2G2.2, § 2G2.1 "also recommends enhancements for conduct present in nearly every case to which the guideline would apply" and lists several examples. *Id.* at 1115; *see* U.S.S.G. §§ 2G2.1(b)(1), (b)(3), (b)(4), & (b)(6)(B). A district court in Illinois has reached the same conclusion for the same reasons, citing to *Jacob*. *See United States v. Price*, No. 09-CR-30107, 2012 WL 966971 (C.D. Ill. Mar. 21, 2012) (imposing concurrent sentences on two counts of conviction for a total term of 216 months imprisonment, despite the Guidelines' recommendation that consecutive sentences be imposed totaling 480 months).

While Mr. Thomas has stipulated that several enhancements under § 2G2.2 are applicable based upon the facts of his case, this does not preclude the argument that the Court should reject or give less weight to this particular guideline (and the enhancements found to be applicable thereunder) based on policy grounds. When specific offense enhancements are found to apply in nearly every case, they do not effectively serve their intended purpose, which is to differentiate among defendants with varying levels of culpability. The enhancements for material involving prepubescent minors, material depicting sadistic or masochistic conduct, use of a computer, and number of images apply in nearly every case to which § 2G2.2 applies. In fiscal year 2015, the 2-level enhancement for material involving prepubescent minors under § 2G2.2(b)(2) applied in

94.5% of such cases; the 4-level enhancement for material depicting sadistic or masochistic conduct or other forms of violence applied in 82.6% of such cases; the 2-level enhancement for use of a computer applied in 94.4% of cases; and the 5-level enhancement for an offense involving 600 images or more applied in 76.1% of cases.  *See* U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics: Guideline Calculation Based (Fiscal Year 2015)*, pp. 45-46, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2015/Use_of_SOC_Guideline_Based.pdf (last accessed Apr. 3, 2017).

It is apparent that these enhancements do not differentiate a particular defendant's behavior from other defendants who are convicted of child-pornography offenses.  Instead, these specific offense characteristics describe conduct that is essentially inherent to the crime itself rather than aggravating factors that indicate a more serious offense or a higher risk of danger from a defendant.  *See, e.g.*, *United States v. Kelly*, 868 F. Supp. 2d 1202, 1208-09 (D.N.M. 2012) (discussing the failure of § 2G2.2 in satisfying goals of sentencing).  Accordingly, these guidelines "impermissibly and illogically skew[] sentences for even 'average' defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability."  *Beiermann*, 599 F. Supp. 2d at 1105.  These enhancements do not assist the Court in differentiating between defendants based on culpability and dangerousness, and should accordingly be rejected or else given less weight than usual.

## CONCLUSION

Mr. Thomas has pleaded guilty to and been convicted of two very serious crimes. However, the applicable Sentencing Guidelines in this case may recommend a punishment that is too severe. Mr. Thomas is a young man who has absolutely no criminal history prior to the instant case. He has been diagnosed with a specific learning disorder and adjustment disorder with mixed anxiety and depression. He has family support from his mother and his girlfriend, along with many other friends in the community. The sentencing range recommended by the PSR of 324 to 405 months is simply too severe. A sentence within that range would be greater than necessary to accomplish the purposes of sentencing in Mr. Thomas's case and would therefore violate the parsimony principle. A lesser sentence within the Guideline range that Mr. Thomas contends is applicable in light of his objections (121 to 151 months) will effectively accomplish the goals of sentencing. Such a sentence will send the message, both to Mr. Thomas and the community, that such conduct will not be tolerated, and will deter Mr. Thomas and the public from engaging in such conduct. A sentence of over a decade behind bars is a just sentence for a serious offense such as Mr. Thomas's, and will promote respect for the law. Such a sentence will protect the public from Mr. Thomas for a lengthy period of time and allow him ample opportunity to mature into a person who will not commit such offenses in the future. Additionally, Mr. Thomas will be subject to a term of supervised release of between 5 years and life, and to sex-offender registration requirements that will further protect the public and ensure that he does not re-offend. This Court has broad discretion in fashioning a sentence for offenses covered by the child-pornography guidelines. Especially if the Guideline range suggested by the PSR is found to be applicable, the Court should exercise this discretion to vary downward based upon the § 3553(a) factors.

Respectfully submitted,

BRUCE D. EDDY
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By:  /s/ *Bruce D. Eddy*
Bruce D. Eddy
Federal Public Defender
3739 Steele Blvd., Suite 280
Fayetteville, AR 72703
479-442-2306

Counsel for Defendant

CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the Assistant United States Attorneys who have entered their appearances in this case, all of whom are registered CM/ECF users.

 /s/ *Bruce D. Eddy*
Bruce D. Eddy
Federal Public Defender