IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                               RESPONDENT

vs.                              Criminal No. 4:16-cr-40008
                                 Civil No. 4:20-cv-04094

NATHAN KARL THOMAS                                                         MOVANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Movant is Nathan Karl Thomas ("Thomas").  Thomas filed a *pro se* Motion to Vacate under 28 U.S.C. § 2255 on October 19, 2020.  ECF No. 65.  Thereafter, Thomas was appointed counsel.  ECF No. 69.  Thomas then, through counsel, filed an Amended[1] Motion to Vacate under 28 U.S.C. § 2255 (hereinafter the "Motion") on January 4, 2021.  ECF No. 73.  The Government responded to this Motion on March 3, 2021.  ECF No. 74.  Thereafter, on September 8, 2021, the Court held a hearing to address this Motion.  ECF No. 86, 88.  The Parties have filed post-hearing briefing.  ECF Nos. 90, 93-94.  This matter is now ripe for consideration.

The Motion was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.  The Court has reviewed the Motion, the response, and the post-hearing briefing; and based upon that review, the Court recommends this Motion be **DENIED**.

**1.    Procedural Background[2]:**

In the present action, on March 31, 2016, Thomas waived Indictment, and a two-count Information was filed against him.[3]  ECF Nos. 1-2.  Count 1 and Count 2 provide as follows:

---

[1] As an Amended Motion, it replaces the original.  *See In re Atlas Van Lines, Inc.,* 209 F.3d 1064, 1067 (8th Cir. 2000) (recognizing "[i]t is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect").  Thus, the Court will only consider the Amended Motion and will refer to it as the "Motion."

[2] The "Procedural Background" is taken from the pleadings and publicly-filed documents in this case.

COUNT ONE

On or about October 30, 2014, in the Western District of Arkansas, Texarkana Division, the Defendant, **NATHAN KARL THOMAS**, knowingly received a visual depiction namely "bc126b4c-bc72-4c46-aff7-b21cde11317f.jpg" that had been mailed, shipped and transported in interstate and foreign commerce and which contained materials that had been mailed, shipped and transported by any means, including by computer, and the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct as that term is defined in Title 18, United States Code, Section 2256, and the visual depiction was of such conduct, and attempted to do so; all in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

COUNT TWO

On or about December 3, 2014, in the Western District of Arkansas, Texarkana Division, the Defendant, **NATHAN KARL THOMAS**, knowingly received a visual depiction namely "prod-kik@anyvideo.co+8290e4e8-ff64-4e84-948a-fa222dd6b06e.mp4" that had been mailed, shipped and transported in interstate and foreign commerce and which contained materials that had been mailed, shipped and transported by any means, including by computer, and the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct as that term is defined in Title 18, United States Code, Section 2256, and the visual depiction was of such conduct, and attempted to do so; all in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

ECF No. 2.

On March 31, 2016, Thomas pled guilty to both Count One and Count Two. ECF No. 5. At the time he pled guilty, Thomas was represented by Ms. Tiffany Fields in the Federal Public Defender's Office. As a part of this Plea Agreement, Thomas admitted to having a sexually explicit image of fourteen year-old minor on his phone. ECF No. 5 ¶ 3. Thomas also admitted to having other images or video of the same minor: "In addition to the image of the minor victim that was contained in count 1 of the information, additional images and videos of the same minor

---

[3] In his prior federal criminal case, Thomas was arrested on December 6, 2014, and a criminal complaint was entered against him for violating 18 U.S.C. § 2252A(2)(B): "[A]ny person who knowingly receives or distributes any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." *See U.S. v. Thomas,* 4:15-cr-40001 (ECF No. 1). This case was later dismissed for sentencing in the current action.

victim engaging in sexually explicit conduct were recovered from both a LG model cellular phone as well as a Samsung SCH-S720C Galaxy Proclaim cellular phone that were seized from **NATHAN KARL THOMAS**." *Id.*

On August 4, 2016, Bruce Eddy in the Federal Public Defender's Office entered an appearance on behalf of Thomas; and on February 22, 2017, Tiffany Fields withdrew from Thomas's case. ECF No. 8. Thereafter, on April 3, 2017, Thomas, through his counsel Bruce Eddy, filed a Sentencing Memorandum. ECF No. 23. In this eighteen-paged document, Mr. Eddy outlined the facts of the case against Thomas and calculated the sentencing range under the applicable Sentencing Guidelines. *Id.* He argued, "the applicable Sentencing Guidelines in this case may recommend a punishment that is too severe. Mr. Thomas is a young man who has absolutely no criminal history prior to the instant case. He has been diagnosed with a specific learning disorder and adjustment disorder with mixed anxiety and depression. He has family support from his mother and girlfriend, along with many other friends in the community." ECF No. 23 at 17.

As a part of his Sentencing Memorandum, Mr. Eddy argued that Thomas should be sentenced within the range of 121 to 151 months because such a sentence "will effectively accomplish the goals of sentencing." ECF No. 23 at 17. Mr. Eddy also argued that Thomas "be subject to a term of supervised release of between 5 years and life, and to sex-offender registration requirements that will further protect the public and ensure that he does not re-offend." *Id.* Mr. Eddy did not request a specific downward departure but, instead, requested "the Court . . . exercise this discretion to vary downward based upon the § 3553(a) factors." *Id.*

A sentencing hearing before the Honorable Susan O. Hickey was set for June 19-20, 2018 in Texarkana, Arkansas. ECF No. 31. During this two-day sentencing hearing, the

Government called five witnesses, but Thomas called no witnesses. *See* ECF No. 60. Instead, Thomas, through his counsel Mr. Eddy, aggressively cross-examined (and in some cases, even re-cross-examined) each of the Government's witnesses. *Id.* By this Court's count, out of the 250-page transcript from the sentencing hearing in this matter, Mr. Eddy cross-examined the Government's witnesses over the course of 60 of those pages. *Id.* Furthermore, as a part of this sentencing hearing, Thomas apologized and specifically took "fully responsibility" for his actions. ECF No. 60 at 222-223.

Thomas's Final Presentence Investigation Report ("PSR") was filed on June 21, 2018. ECF No. 46. In this report, Thomas's recommended imprisonment range was 360 to 480 months, and Thomas was directed to pay restitution of $3,163.96 for his victim's counseling. *Id.* § 138. Due in no small part to Mr. Eddy's efforts, Thomas was sentenced to the very bottom of that recommended range and was given two consecutive terms of 180 months (for each count). ECF No. 47.

Thereafter, despite having agreed to waive "the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)," Thomas appealed his sentence and the restitution order to the Eighth Circuit. ECF No. 49. On September 26, 2019, the Eighth Circuit entered its opinion enforcing the appeal waiver as to the sentence but vacating Thomas's restitution order. ECF No. 62-1. In this opinion, the Eighth Circuit noted the following:

> We are troubled that Thomas continues to show no remorse for his victims, including refusal to pay for a victim's counseling, but that is not a sufficient basis to impose restitution without authorization by statute. We vacate the order of restitution in this case but otherwise grant the government's motion to dismiss.

*Id.*

On October 19, 2020, Thomas filed his original *pro se* Motion to Vacate under 28 U.S.C. § 2255. ECF No. 65. Thomas was then appointed counsel. ECF No. 69. Through appointed counsel, Thomas then filed an Amended Motion to Vacate under 28 U.S.C. § 2255. ECF No. 73. The Government responded to this Motion on March 3, 2021. ECF No. 74. The Court held a hearing on this Motion on September 8, 2021. ECF No. 86. After this hearing, the Parties submitted additional post-hearing briefing. ECF Nos. 90, 93-94. This matter is now ripe for consideration.

**2.**     **Applicable Law**:

A § 2255 motion is fundamentally different from a direct appeal. The Court will not reconsider an issue, which was decided on direct appeal, in a motion to vacate pursuant to § 2255. *See United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) ( "Claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255 .").

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

**3.**     **Discussion**:

In his Motion, Thomas raises four claims for relief under 28 U.S.C. § 2255: (A) trial counsel violated his constitutional right to effective assistance of counsel by failing to move for a downward departure or for a variance; (B) trial counsel violated his constitutional rights by providing ineffective assistance of counsel when he failed to present favorable witness testimony at sentencing; (C) appellate counsel violated his constitutional right to effective counsel by

failing to present the argument that trial counsel provided ineffective assistance by not presenting favorable witnesses at sentencing; and (D) the cumulative errors led to constitutionally ineffective assistance of counsel. ECF No. 73 at 1-8. The Government has responded to each of these claims. ECF No. 74. This matter is now ripe for consideration.

### A. Failure to Request a Downward Departure or Variance

Thomas first claims his trial counsel was ineffective because he failed to move for a downward departure or for a variance. ECF No. 73 at 4-5. Specifically, he claims the following: "Trial counsel acted ineffectively by failing to file a motion for downward departure, a motion or variance, or to prepare, build and present favorable evidence at the sentencing hearing in favor of departure or variance." ECF No. 73 at 4. Thomas also claims that "[h]ad counsel filed motions for variance and departure and prepared and presented evidence in support of those motions at sentencing, the outcome would have been different because Mr. Thomas would have received a lesser sentence." *Id.* at 5.

The Government has responded to this claim. ECF No. 74 at 22-25. In this response, the Government claims the following: (1) Thomas's claim fails to meet the pleading requirements of § 2255; (2) Thomas fails to allege specific facts in support of his claim; and (3) Thomas's claim is unsupported by the record because his trial counsel did request a downward variance. *Id.*

Upon review of these arguments, the Court finds Thomas is not entitled to *habeas* relief on this issue. As the Government argues, even though Mr. Eddy "didn't utter the magical words of a downward variance . . . he in fact moved for a downward variance from the sentencing guideline." ECF No. 88 at 10. The Court agrees with this argument. As recognized above, as a part of his Sentencing Memorandum, Mr. Eddy argued that, even though the PSR recommended a range of 360 to 480 months, Thomas should be sentenced within the range of 121 to 151

months because such a sentence "will effectively accomplish the goals of sentencing." ECF No. 23 at 17.

Again, at the sentencing hearing, Mr. Eddy re-urged this request and argued for a term of imprisonment of 10 years: "And then for as far as the sentence, Your Honor, I believe a term of imprisonment of 10 years followed by a term of supervised release for 10 years to follow that is a reasonable sentence in this particular case." ECF No. 60 at 209:20-2:10:1. Even after Judge Hickey announced her sentence, Mr. Eddy again re-urged his request: "I reassert all of my prior objections. I also believe this is an unreasonable sentenced [sentence] based upon the fact[s] and circumstances that I've argued previously. So, I object to that." ECF No. 60 at 244:10-13. Thus, the Court finds Thomas's counsel was not ineffective for failing to request a downward departure or variance; indeed, he did request a variance. Thus, the Court recommends this claim be **DENIED.**

### B. Witness Testimony at the Sentencing Hearing

With his second claim, Thomas argues his trial counsel was constitutionally ineffective because he failed to call any witnesses on Thomas's behalf. ECF No. 73 at 5. Thomas argues such an error was prejudicial: "trial counsel did not prepare witnesses, did not subpoena witnesses, and did not have witnesses available at sentencing. Trial counsel should have presented favorable witnesses on behalf of Mr. Thomas. Had trial counsel done so, there is a reasonably probability that the result of the proceeding would have been different and that Mr. Thomas would have received a lesser sentence." *Id.*

In response, the Government argues Thomas is not entitled to *habeas* relief on this issue. ECF No. 74 at 25-26. The Government argues such a decision—whether to call witnesses or not—was a trial strategy. *Id.* Further, the Government argues, "Thomas has failed to show a

reasonable probability that the Court would have imposed a shorter sentence had trial counsel called a favorable witness at sentencing." *Id.*

### 1. Thomas's Argument: Testimony of Thomas and Thomas's Mother

At the Court's hearing on this Motion on September 8, 2021, the bulk of the testimony and argument was directed to this issue. ECF No. 88. Thomas's counsel argued the following at this hearing: "At the sentencing hearing, he asked that witnesses be presented on his behalf. No such witnesses were presented. And it is our contention that had those witnesses been developed and presented, that the Court would have then had the grounds to grant a downward departure for variance." *Id.* at 7:14-18. Also at this hearing, Thomas testified he requested witnesses be called at his sentencing hearing, but none were called. *Id.* 19:11-13.

Thomas presented testimony from his mother, Rhonda Hansbrough[4], regarding his background and upbringing and the impact such a background had on his behavior. *Id.* at 70:6-119:11. Ms. Hansbrough testified she had been prepared to be called on her son's behalf at the sentencing hearing but was not called. *Id.* at 73:9-12; 89:21-90:8.

Ms. Hansbrough testified she had been prepared to explain at the sentencing hearing that Thomas had been exposed to sex and a deviant sexual lifestyle at a young age. *Id.* at 74:2-24. Specifically, she testified Thomas was exposed to sex "from six months on," was probably six when he was explained the use of condoms and was exposed to the alternative sexual lifestyle of BDSM (Bondage, Discipline, Sadism, and Masochism) at very young age. *Id.* She testified she exposed Thomas to "asphyxiation" (being choked) and "edge play" ("when you play with something that could kill you") during sex. *Id.* at 82:4-83:13. She testified Thomas was exposed

---

[4] Ms. Hansbrough is also referred to as Ms. Moore throughout the transcript. *See* ECF No. 88 at 8:15-19.

8

to "edge play" by the age of 12. *Id.* at 83:13. She testified she exposed Thomas to sex toys at least by the time he was 14. *Id.* at 84:10-85:11.

Ms. Hansbrough also testified Thomas wanted to have other witnesses called on his behalf but none were called. *Id.* 72:15-19. She also testified "there were several people" who could have testified on Thomas's behalf. *Id.* at 73:1-6. She testified those people included Kara McConnon (Thomas's girlfriend) as well as other individuals, including his brother, a neighbor, and several friends. *Id.* at 93:5-21. She testified these individuals could have testified to Thomas's character. *Id.* at 94:22-97:24.

### 2. Government's Argument: Testimony of Mr. Eddy

In response to Thomas's claim that his trial counsel was constitutionally insufficient, Mr. Eddy testified at the hearing before this Court. ECF No. 88 at 143:9-238:17. Mr. Eddy testified that he sought the testimony of Thomas's mother or Ms. Hansbrough for sentencing. *Id.* at 154:25-155:9. Mr. Eddy testified as follows: "And I said, if this goes to trial—I said I would very much like you to be able to testify at that trial and explain this. Explain the environment that he grew up in at home. And so to put into context what he purportedly was saying . . . and made it much less egregious than if you just say the words spoken. . . . And so I thought that that would be a way to educate the—the jury on what Mr. Thomas was meaning by these things." *Id.*

Despite the fact Mr. Eddy agreed Ms. Hansbrough's testimony could be helpful and requested her testimony, she declined to testify. *Id.* at 155:10-16. Mr. Eddy testified regarding those encounters:

> And she—she thought about it for a little while, and she said, no. I will not testify to that on the stand. And I—and I quizzed her. I said, I think this could really help your son and—and I would ask you to please reconsider and think about this. And she said, well, I'll think about it. But, basically, no. And that was the first time I had approached her, and then there were other times after that.

*Id.* Mr. Eddy testified the PSR supports the fact she was not willing to divulge details of her behavior and Thomas's home life. *See id.* at 194:13-22. ECF No. 46 ¶ 114. The PSR provided as follows:

> Defense counsel indicated the defendant may have been exposed to witnessing sexual contact between others at a young age and referred the probation officer to the defendant's mother for verification of this information. In speaking with the defendant's mother, *she advised she has no knowledge of the defendant ever witnessing such activities and that the defendant never witnessed anything of this nature in her home.*

*Id.* (emphasis added). Mr. Eddy also testified that due to the nature of her potential testimony, he did not believe it would be in the best interests of his client to compel her testimony or subpoena her. *Id.* at 156:1-6. Instead, Ms. Hansbrough sent a letter prior to sentencing in support of her son. *Id.* at 195:23-196:6.

Mr. Eddy testified that Thomas suggested his girlfriend, Kara McConnon, be called as a witness to testify. *Id.* at 178:14-180:13. After interviewing Ms. McConnon, however, Mr. Eddy determined her testimony would actually bolster the Government's case and not Thomas's case, especially in terms of Thomas's sexual preferences. *Id.* As he testified, "I don't want to put a witness on the stand that would in fact seem to—to support what . . . [the victim] . . . said instead of calling into question what she said." *Id.* at 180:10-13.

As for any other potential witnesses, Mr. Eddy testified three people agreed to come and testify in support of Thomas but then did not respond when he attempted to contact them again for a follow-up. Mr. Eddy testified one witness who was a former friend of the victim would not answer his call and could not be located for the sentencing hearing. *Id.* at 182:5-11. Another such witness did the same thing: "I can't locate her." *Id.* at 184:10-11. Thomas's father was also considered another potential witness for sentencing. *Id.* at 186:3-10. While he met with Mr. Eddy and provided "good information" about Thomas, he also did not answer the phone

when Mr. Eddy tried to prepare him for the sentencing hearing. *Id.* at 186:22-188:1. Mr. Eddy testified as follows: "And it never made any sense to me because he was actually glad that Mike [the investigator] had—had come to visit with him. And what happened to him, I—I don't know. I just have no idea." *Id.* at 188:2-4.

Mr. Eddy testified he did not subpoena these witnesses because they had volunteered to testify; further, he did not find such a process to be helpful to his client: "And I've just not found that if you have to bring the family member in against their---against their will, are they really going to be that helpful to you because all they have to do is say, well, you misunderstood that." *Id.* at 190:17-20.

### 3. Evaluation of Counsel's Representation of Thomas

Upon review, the Court finds no basis for *habeas* relief on this issue. Mr. Eddy's testimony is persuasive as to the reason Ms. Hansbrough, Thomas's mother, did not testify at the sentencing hearing. Simply put, the Court finds she chose not to testify at the sentencing hearing. Such a finding is supported by Mr. Eddy's testimony, the PSR ¶ 114 wherein it was reported she denied, to the United States Probation Officer, the very testimony which would have potentially been helpful regarding Thomas's home life. Instead, she submitted a letter in support of Thomas at the sentencing hearing.

Furthermore, the Court finds no basis for finding Mr. Eddy's attempt to call the three witnesses—who agreed to come but did not respond to his later attempts to contact them for the sentencing hearing–was not ineffective. Indeed, Mr. Eddy testified at length regarding his efforts to contact these individuals, and he was certainly more than competent in his representation of Thomas. Mr. Eddy also considered subpoenaing these witnesses, but his decision not to do so qualifies as a reasonable trial strategy. *See, e.g., United States v. Staples,*

410 F.3d 484, 488-89 (8th Cir. 2005) (recognizing the decision to not call a witness is a "virtually unchallengeable" decision of trial strategy). This is especially true where, as here, he believed such a subpoena could be counter productive.

As for the proposed testimony of Thomas's girlfriend, the Court also finds, consistent with the *Staples* decision, that such a determination to not call her as a witness was also a sound trial strategy. As noted above, instead of calling a witness such as Ms. McConnon, Mr. Eddy chose instead to cross-examine the Government's witnesses. Indeed, as recognized above, Mr. Eddy painstakingly and carefully cross-examined each of the Government's witness, and his cross-examination alone accounts for approximately 60 pages of the sentencing transcript at the sentencing hearing. Thus, the Court finds Mr. Eddy's representation of Thomas was more than competent, and Thomas is not entitled to *habeas* relief on this issue. *See Gonzalez v. United States,* 553 U.S. 242, 249 (2008) (recognizing "[n]umerous choices affecting conduct of the trial" do not require client consent, including "the objections to make, the witnesses to call, and the arguments to advance"). Importantly, as Mr. Eddy testified at the sentencing hearing and as referenced above, any such testimony from Ms. McConnon regarding Thomas's sexual preferences would have likely bolstered the victim's testimony and would hardly lessen his sentence. Accordingly, the Court recommends this claim be **DENIED.**

### C. Failure to Allege Ineffective Assistance

Thomas's third argument is that his appellate counsel violated his constitutional right to effective assistance of counsel because he failed "to present the argument that trial counsel provided ineffective assistance by not presenting favorable witnesses at sentencing." ECF No. 73 at 6. As recognized above, however, Mr. Eddy was not ineffective for handling the witnesses and representing Thomas at sentencing in this matter.

Accordingly, his appellate counsel was not ineffective for failing to raise this issue. *See, e.g., Thomas v. United States,* 951 F.2d 902, 905 (8th Cir. 1991) (*per curiam*) (recognizing counsel's "failure to raise these meritless issues does not constitution ineffective assistance of counsel"). Furthermore, Thomas was not prejudiced because this issue has been considered as a part of this § 2255 proceeding. *See, e.g., United States v. Davis,* 583 F.3d 1081, 1091 (8th Cir. 2009) (recognizing ineffective-assistance claims are "best litigated" in § 2255 proceedings). Accordingly, the Court recommends this claim be **DENIED.**

### D. Cumulative Error

Thomas's fourth argument is that trial counsel's errors, when considered cumulatively, require his sentence be vacated. ECF No. 73 at 6-7. Thomas argues that his "sentencing and appeal were riddled with reversible errors including ineffective assistance of counsel at both levels. As a result of these failures, Mr. Thomas was sentenced to 360 months imprisonment—a sentence obtained in violation of his constitutional right to effective assistance of counsel and the laws of the United States." *Id.*

Upon review, the Court finds this argument offers no basis for *habeas* relief. As an initial matter, the Eighth Circuit does not recognize a claim of "cumulative error." *See Pryor v. Norris,* 103 F.3d 710, 714 n.6 (8th Cir. 1997) (holding "Pryor also argues that the cumulative effect of her trial counsel's alleged errors resulted in prejudice. We have held, however, that 'cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own.'" (citation omitted)).

Additionally, Mr. Eddy's representation of Thomas was far more than just constitutionally adequate. Once he was substituted as counsel for Thomas, Mr. Eddy began aggressively representing his client. Mr. Eddy filed a detailed, eighteen-page sentencing

13

memorandum advocating on behalf of Thomas (ECF No. 23); Mr. Eddy explained the PSR with Thomas (ECF No. 60 at 16:18-24); Mr. Eddy filed twelve objections to the PSR (ECF No. 60 at 17:5-8); Mr. Eddy extensively cross-examined the Government's witnesses at sentencing (ECF No. 60 at 27:22-43:19; 61:7-70:18; 115:22-135:3; 139:10-140:4; 148:1-152:16; 165:14-169:1); Mr. Eddy argued witness testimony should not be introduced at sentencing (ECF No. 60 at 46:15-22; 71:19-25); Mr. Eddy objected during sentencing to various questions (ECF No. 60 at 135:10-16; 142:20-22; 155:9-15; 192:17-22); and Mr. Eddy competently argued on Thomas's behalf at sentencing (ECF No. 60 at 183:15-191:18; 209:20-221:23). Accordingly, even if cumulative error were recognized in the Eighth Circuit, there was no error by trial counsel. The Court recommends this claim be **DENIED.**

**4.     Conclusion**:

Thomas's Motion should be **DENIED** in its entirety. Thomas is not entitled to relief as to any of his four claims. First, his counsel was not ineffective for failure to request a downward departure or variance; indeed, his counsel did make such a request.

Second, his counsel was not ineffective for failing to present witnesses at the sentencing hearing; indeed, he attempted to do so but no witnesses were willing to testify on Thomas's behalf. Third, his appellate counsel was not ineffective for failing to raise a meritless issue on appeal. Fourth and finally, Thomas has not demonstrated cumulative ineffective assistance of counsel such that he is entitled to relief.

**5.     Recommendation**:

Accordingly, based on the foregoing, the Court recommends the Amended Motion (ECF No. 73) be **DENIED.** The Court further recommends no Certificate of Appealability issue in this matter.

As recognized above, the Amended Motion replaces the original Motion. Thus, the Court recommends that original Motion (ECF No. 65) be **DENIED AS MOOT**.

**The Parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court**. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**DATED this 19th day of January 2022.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE